The next case on the calendar this morning is United States v. Sampel, number 19-1654, I guess. Ms. Schneider. May it please the court, my name is Tina Schneider. I'm here for Juan Sampel. Mr. Sampel was conspiracy to distribute five kilograms or more of cocaine. He received a 30-year sentence and we're challenging the imposition of three sentencing guideline enhancements today, all of which were objected to below. I'll start with the enhancement for maintaining a drug premises. Mr. Sampel received two levels for using his house, his home to manufacture or distribute drugs. However, looking at all the evidence in the case, there was not enough to show by a drug venture. In order to impose the enhancement, manufacturing or distributing drugs has to be a primary or principal use of the premises. Here the premises were the defendant's home where he lived with his wife and adult stepson. The evidence showed no drug transactions occurring at the house. Ms. Schneider, he met with Mr. Gonzales or Mr. Ocasio on one occasion to make arrangements, right? And then he met again with that person, Mr. Ocasio, and they went away to do the drug transaction. But then also there were gloves, plastic bags, the digital scale with white powder, large amounts of cash, and then the marijuana. Granted, the larger quantity of marijuana was in his adult stepson's, I guess, bedroom. Nonetheless, we have said in other circumstances that those tools of the trade would be enough in certain circumstances to show non-incidental use. Even though it's clear that he was living there as well, he had the start of transactions in these tools there. Why is that not enough? What's missing? Well, a few things are missing. First, let me just address the meeting with Ocasio. They met to discuss setting up their relationship in the garage of Mr. Sample's home. Discussing a drug deal does not render a place, is not even a factor in determining whether a residence is a drug premises. Secondly, it's misleading to use the time where they met at the house and then went to another location to actually do the drug deal because nothing happened at the house. All they did was, the drugs never came out of the supplier's car. No money was exchanged. They met at the house. They went to another location. And what about the scales? What about the scales? So there was the scales, baggies, disposable gloves, and cash. And marijuana, but we can argue about whether that is... Okay, so marijuana was in the adult's stepson's separate room. It was never alleged. There was no allegation that marijuana was a part of this conspiracy. So I think the marijuana is out. So we have the other tools of the trade. The problem here is twofold. First, they're not tools of this trade. So the evidence was that, and he was a cocaine. There was no evidence that any amount less than one kilo ever changed hands here. So what we have, the scale and the baggies and the gloves, those are not tools of the trade for this drug trade. Also, the second problem here is that looking at the totality of the evidence, you cannot show from those items that the home was being used principally... A principal use of the home was not drug dealing. So keep in mind the extraordinary investigative efforts the police made here. They had wire intercepts. They had hundreds of live surveillance. They had GPS devices placed on all the co-conspirators' vehicles. If Mr. Sample's home had been being used with the drug trade, with this drug trade, they would have found that out. Was there evidence of any other location then? Oh, yeah. The evidence was that transactions would occur at the supplier's home, Ocasio's home, the customer's home, that's Mr. Smith, the customer's clubhouse, the customer's mother's and insurance agency run by the... But that's other people. I guess that's other people. My question is, assuming we disagree with this idea that there's two separate conspiracies going on and your client had the tools of the trade, what evidence was there that there was some other location that he was utilizing for purposes of manufacturing and distributing the cocaine he had? None at all, because the evidence showed that this was kind of a wholesale operation with my client being the middleman. And so based on all the intercepted phone calls and texts, the surveillance and whatnot, the evidence showed that the customer would place an order. My client would pick up the drugs from Mr. Ocasio, the supplier, take them to the customer, get the money and take it back to the supplier. Ms. Schneider, you're running short on time. It seems to me that you've got possibly stronger arguments relating to role and the affection enhancement. So are you planning to get to those? I hope to. I think all three arguments are great. So in terms of the three-level enhancement for supervising his wife and the two-level enhancement for manipulating their relationship, exploiting their relationship in order to get her involved, there is no evidence at all that that happened. So the court based its imposition of these two enhancements on the single time that there was a phone call the day before where my client and the supplier talked about where is that exchange of money going to take place? And they decided it would take place at Mrs. Sample's insurance agency. The next day, the evidence was that Ocasio went to the insurance agency. There's nothing more there to show what the dynamic was between husband and wife that Mr. Sample directed his wife to make that exchange. It's pure supposition. And the case law is that it's got to be something more than just shared criminal activity. You have to have some evidence that the defendant is directing or supervising, giving orders to the other person. And there was none of that here. Thank you. You have two minutes of rebuttal. You'll be able to raise the other issue again. Mr. Eldridge. Thank you, Your Honor. Good morning and may it please the court. My name is Sean Eldridge. I'm an assistant United States attorney for the Western District of New York. I represent the trial before the district court. The district court here did not clearly err in determining that based on the totality of the circumstances after presiding over a lengthy multi-week trial, that Mr. Sample was entitled and appropriately received the three enhancements here at issue. That is the maintaining of a premises for the purpose of distributing or manufacturing a supervisory role, which also dovetails into the two point enhancement for the use of affection or friendship. It could also be fear or impulse, but here the theory is a friendship or affection to involve his wife into his illegal drug trafficking activities. Let's start with the last one. What is the evidence that he used affection other than the fact that she's his wife? What is the evidence that supports anything about the relationship between these two? Certainly, Judge. So the two primary individuals who testified as cooperators in this case, Mr. Smith, who's also referred to as Fish, and Mr. Acasio, both testified to some similar things as it relates to Miss Sample. One of the primary things is that she was a successful businesswoman of her own right. She ran a farmer's insurance business and that that Mr. Sample and as the district court found that Mr. Sample used his relationship with Miss Sample to involve her in those activities to involve her in the transaction involving $117,000 to get Mr. Acasio in the front door in the first place by setting up the call between them where Miss Sample already had the phone number because they were insurance customers together. Pass that along and set up. Yeah, go ahead. Go ahead. There were there were other meetings at the insurance office, right? There were a couple other meetings at the insurance office. Yes. And what evidence that she received little or no compensation? Well, Judge, the only the only money that was found as it relates to Miss Sample was approximately $4,000 that was located in her purse at the time the search warrant was executed and that she did not contest as being proceeds from the drug crime. And I'd also point out, Judge, the those two elements were not objected to below. So the court reviews those for plain error. The only objection before the district court on that was essentially that Miss Sample was not involved in the drug trafficking activities, period. And that was the language used in the objections. But what's the evidence of her minimal knowledge of the scope of the criminal enterprise? So we have no we're guessing, aren't we? No, Judge. No. And Judge Sergusa, Judge had the benefit of presiding over the multi week trial. He presided. What's the evidence that he relied on? So I think the primary evidence judges the testimony of Acasio in the testimony of fish, Mr. Smith, who testified that in the transactions they had with Mr. Sam Powell, that Miss Miss Sam Powell, Miriam Sam Powell had facilitated setting them up. But their real relationship with her was as their insurance salesperson. So her relationship with her relationship with her husband, right? That's the co conspirator. So if she did this as a favor, because he implored her and played upon our emotions, then that obviously is a basis for an enhancement. But all we know is that she is his wife. And we're inferring or assuming that that was how he got her to do this. What's your basis for saying that? Well, just the conversations. So Judge Sergusa found it, I'm not going to read it all because it'll take too much time. But it's at pages 49 to 51 of the appendix. And Mr. sample does not challenge those factual findings. He made that clear in his brief is his challenge is only that those findings do not support the enhancement as a matter of law. And just Sergusa ran through the series of transactions where Miss Mr. Sam Powell is saying you can you know, pick up the tools from my wife at farmers. There's the conversation between Miriam and Juan Sam Powell that was intercepted that again, the district court heard the conversation. I mean, voice tone makes a difference inflection makes a difference in being able to hear that in context, just Judge Sullivan, could there be a reasonable other view of the facts? Yes, that's entirely possible. But that's the fact finders choice to make. And it can't be clearly erroneous, even if there are two permissible views of the fact, or if your honor, you know, sitting as the district court in the first instance might have made a different determination. But those instructions, I mean, Judge Sergusa found that a concierge based on his testimony testified that on the date of that transaction, February 24 2016. He went to his wife's business, as instructed by you, you refers to Mr. Sam Powell, and that finding is not challenged on appeal, and then picked up the box of drug money, and talks about that in the context of doing it in at the insurance business, which she ran legitimately, and was her only involvement, these series of transactions, where the primary contact is Mr. Casio, Mr. Sam Powell, with this, I don't want to call it this. And when you said about, well, you're saying that, well, they didn't even check, they did not challenge at all, what the nature of the relationship was, and what was the motivation of, of his wife, that it was that is simply arguing that she was not involved, period, is that, is that what the record is on that? Judge, my recollection of what Mr. Othout, who was trial counsel wrote in his objections, and I think I cited this in our brief, was that his position was that Miriam Sam Powell was not involved in the drug business. And I remember it said in the drug business, period, that was his position below. Okay. But could you address the enhancement for a managerial role? I thought the record was quite sparse as to Mr. Sam Powell directing his wife to do anything. There's that one conversation that was focused on it, which seemed to me entirely consistent with them just agreeing about the timing of something rather than him telling her to do anything at any point. What what do you rely on? Again, the district court can refer generally to having, you know, seen the trial. But as Judge Sullivan has stressed, we actually need to be able to review this by looking at the evidence that you believe the court relied on. Certainly, Judge. So at the beginning of Judge, and I just want to be clear, there's two role enhancements here. I think the court is not referring to what I'll call the managerial role enhancement, but instead is talking more about the use of affection. No, I'm talking about managerial role, because Judge Sullivan and you were just talking about minimal knowledge and so on. I want to see what you have in terms of managerial role as well, because he had to have a superior role to her. And it seemed to me that these conversations that we have access to and that the district court pointed to are entirely consistent with them having been equal partners in a drug business. I mean, we have her connecting Ocasio to her husband, and the actions that happened that were also relied on for use of affection. But I don't see anything that puts him in a superior position to her and directing her to do um, to take the kind of action that would be necessary to give him the managerial role enhancement. So I must be missing something. I'm looking for your help. Sure, Judge, if I could address a legal matter and a factual matter on the legal matter, the Your Honor referred to the minimal knowledge of the scope of the enterprise that only goes to the use of affection. Okay, great. And that's maybe that was my confusion. Because as to the role, what we're really talking about is that Mr. Sam Pell was a manager or supervisor, and that there were five or more people or that it was otherwise extensive. In terms of the minimal knowledge of scope or role, Judge, I think, right, you've already referred to the conversation that referred to the $117,000 cash pickup. I'm sorry, I've confused you. I would like you to just focus on managerial role, in which he needed to have a superior position to his wife and have directed her to take actions consistent with the drug conspiracy. Right? Sure. No, thank you. And I apologize if I misunderstood. I think what the evidence at trial shows is that the primary conspiracy as it was proven at trial relates to kind of a series of transactions. Mr. Acasio, and I'm oversimplifying this, but Mr. Acasio supplies Mr. Sam Pell, Mr. Sam Pell then supplies Mr. Smith, and Mr. Smith resells it to others. That's the 150 kilograms from Mr. Acasio to Mr. Sam Pell. And then his role as it relates, there's no there's no testimony that Miriam Sam Pell is consistently with Juan Sam Pell and outselling drugs or that Ms. Sam Pell is selling drugs to Mr. Smith. Rather, she's involved in a couple important transactions, but not a lot of them. We have the initial kind of setup what I'll refer to when she gave the phone number such that you could make almost that introduction. And what she really did was pass along a message. She didn't Ms. Sam Pell did not say I'm sorry, I'm using first names not to be impolite, but just to keep it separate. Miriam said to Mr. Sam Pell, essentially, my husband wants to talk to you and gave him the number. Right? She didn't she didn't say we're going to start selling cocaine together. I have this cocaine business on the side of my farmer's insurance, but I need to put you in touch with my husband. And that was the testimony from Mr. Acasio at well that then he went after speaking to Mr. Sam Pell, he went to Mr. Sam Pell's house, the transaction was between the two of them, the two of them left to go do their dealings. And that was consistent throughout the rest of the trial. The couple of times where Ms. Sam Pell is involved in those transactions, it is at the behest of Mr. Sam Pell, who is doing 150 kilograms worth of transactions with Mr. Acasio. Judge, I see them out of time. As it relates to the the premises enhancement, I think the court has already pointed out many of the things that I would point to the drug proceeds in the house, the scale with the powder residue, the boxes, sandwich bags in the bedroom. The enhancement does not say that it has to involve the controlled substance that is at issue in the indictment. So the kind of the cocaine marijuana distinction. So I don't concede that the marijuana is irrelevant. But I think even if you take it out, the enhancement still applies. So since I'm over time, unless the court has other questions, I'll rest on our papers. Thank you very much. Thank you, Mr. Eldridge. Ms. Schneider. Thank you. Just a few things as to what basis these enhancements were objected to below. In the defendant's objections to the PSR, paragraph 105 was the three-level enhancement for being a supervisor. And the defendant's objection states, the defendant denies being a manager or supervisor in this matter. The defendant denies directing his wife as to any 103, which was the enhancement for exploiting their relationship. The defendant's response says he objects to this entire paragraph. Next, as to the intercepted telephone call between Miriam and Juan's sample that is relied upon in defendant's brief to show somehow their dynamic or that he was supervising her. That wasn't a phone call that the court relied on. And you can see why. Because it's simply Juan telling his wife, I'm going to be late. I have to wait for these guys, meaning Smith and to do anything. And in fact, if you look at the intercepted texts and calls before and after that phone call, you'll see that that's Smith is ordering drugs and Ocasio is trying to get the drugs together. Finally, I'd just like to say the whole idea that, well, there can be two permissible inferences from the evidence. And so we can't say that district court is clearly wrong. The fact of the matter is there has to be evidence before there can be two permissible views of the evidence. And here there's no evidence at all. Thank you very much. Thank you for your arguments. We will reserve decision.